DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1907.

---

### Frederick S. Hebard v. Thomas Tilley.

#### Gen. No. 13,269.

1. VERDICT—*when disturbed as against the evidence.* A verdict which clearly preponderates in favor of the losing party will be set aside on review.

2. RECEIVERS, ETC.—*what essential to render, personally liable.* Wherever assignees, trustees, receivers, or the like, have been held to a personal responsibility, such responsibility is predicated upon contracts made by them either in their official capacity or contracts which, by legal construction, are. held to have the quality of personal responsibility.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed May 13, 1907.

ROBERT F. PETTIBONE, for appellant.

CONSIDER H. WILLETT, for appellee; SIDNEY S. GORHAM, HENRY W. WALES and WILLIAM H. DUVAL, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Thomas Tilley, an architect, commenced this suit in assumpsit against Frederick S. Hebard, and filed a

(1)

declaration consisting of the common counts, with a
bill of particulars attached as follows:

"For services as custodian of building known as
'Open Board of Trade Building,' 18-24 Pacific avenue,
Chicago, Illinois:

From Aug. 17, 1899, to Aug., 1900, 365
  days and nights, $5 per day,........ $1,825.00
From Aug. 17, 1900, to Aug., 1901, 365
  days and nights, $5 per day,........ 1,825.00
From Aug. 17, 1901, to Aug., 1902, 365
  days and nights, $5 per day,........ 1,825.00
From Aug. 17, 1902, to May 1, 1903, 254
  days and nights, $5 per day,........ 1,275.00

                                      $6,750.00."

The suit proceeded to trial under a plea of *non
assumpsit* before the Circuit Court, with a jury, the
latter of whom rendered a verdict for $2,670, upon
which the court, after overruling a motion for a new
trial, entered judgment.

The points urged in argument for a reversal of this
judgment are that the verdict does not do justice be-
tween the parties; that it is clearly contrary to the
weight of the evidence; error in the rulings of the
trial court in the admission and rejection of evidence,
and error in the instructions of the court to the jury.

The plaintiff rested his case upon an implied prom-
ise to pay for the services he claims to have rendered
as custodian. In May, 1897, plaintiff rented an office
on the third floor in the Open Board of Trade Build-
ing, on La Salle street, Chicago, at a rental of $25
per month, from one Barclay W. Perkins, receiver
under a foreclosure proceeding instituted by the Illi-
nois Trust & Savings Bank of Chicago. In that office
plaintiff transacted his business or calling as an archi-
tect, in which he had theretofore been engaged for
about fifty years. In May, 1899, the Open Board of
Trade Building was closed and vacated by all of the
tenants but Tilley. He was indebted for unpaid rent,

Hebard v. Tilley.

and by an agreement with Perkins, he says, he stayed in the building to take care of it until his arrearages of rent were paid. He testifies he had no special arrangement or agreement with Perkins about what his compensation should be, and he admits that he never requested Perkins to pay him anything. On August 16, 1899, Perkins was discharged as receiver, and the premises abandoned by him, and the parties interested in the foreclosure suit in which he was appointed. On the same day Hebard was appointed receiver in a strict foreclosure suit commenced by the Hibernian Bank of Chicago, and in virtue of the authority thus conferred, Hebard went to the Open Board of Trade Building to take possession and found Tilley there. Hebard was accompanied by Grant Carpenter, manager of the renting department of the real estate firm of Wm. A. Bond & Co. These parties went all over the building together, Hebard explaining to Tilley his connection with the property. Tilley testifies that "Hebard made arrangements to have me stop and look after the building," but Hebard and Carpenter say that Tilley is mistaken, that Tilley "said something about continuing there," and that Hebard replied, "That is something I cannot arrange for now." Tilley moved from the third floor room to the southwest corner of the second floor, where he occupied two rooms, in which he not only transacted his business affairs, but lived. He seems to have been his own housekeeper, doing his own cooking, attended by no one, but occasionally visited by congenial cronies, whom he hospitably invited "to take something"—which "something," the record discloses, was of a liquid nature with alcoholic characteristics. Tilley had his business cards, which he gave out occasionally, and did some architectural work, but we judge from the record very little for which he received compensation. About two years and a half after Hebard's appointment Tilley put on the door of one of his rooms this sign: "T. Tilley, Custodian of Building. Rap loud." The admonition to callers to "rap loud" was because of an

infirmity of deafness with which Tilley was afflicted. During Tilley's custodianship much of the plumbing, ironware and fixtures, such as lead pipe, door knobs, various kinds of plates, faucets, marble tops of wash-stands, etc., were purloined from the building without attracting the attention of Tilley, and it is said that some persons knocked on the door with a hammer, kicked and banged it and rapped on the windows in a vain effort to arouse Tilley. This evidence is claimed to have some bearing on Tilley's claim as circumstances tending to show that he was not acting as custodian, and did not take care of the building, but simply occupied rooms for his own convenience.

During the time covered by Hebard's receivership he gave some directions to Tilley in relation to permitting F. S. Osborne to clean out and occupy a certain portion of the building for sleeping rooms for servants of his hotel, and at another time to store furniture in it. On another occasion Hebard, with Mr. Clarke, the president of the Hibernian Bank, was shown through the building by Tilley. Tilley claims to have had several talks with Hebard in relation to his acting as custodian of the building, but admits that Hebard never agreed to pay him any fixed compensation.

Tilley detailed some conversations with Henry S. Osborne, in which he stated that he went into the building as custodian under an arrangement with Mr. Perkins, acting for the Illinois Trust & Savings Bank. He admitted, however, that he never received any money from Perkins. Plaintiff grounds his right to recover on an implied promise to pay for services as custodian on a *quantum meruit,* and the affirmative proof to sustain such claim is confined to his own testimony. There is no supporting proof. In contradiction to Tilley, Hebard swears that when Tilley talked about continuing there he replied that "That is something I can't arrange for now." That he went to the building but seldom, having employed Carpenter of Wm. A. Bond & Co. to look after it. That at his first

interview with Tilley, Carpenter was with him. Hebard further testifies that Tilley was an old man and apparently in straightened circumstances, and the Illinois Trust & Savings Bank people told him that the old man had no home and that he had better let him stay in the building, and he did. That Tilley never said anything to him about compensation until a few months before he went out. That he had no interest in the property save as receiver, and so explained to Tilley in his first interview. That he never gave Tilley any orders in relation to the building; never found fault with him for any seeming neglect of care for the building, for the reason he did not consider him an employe. That he regarded him as a poor old man, living there as a comfortable place, and he put in a stove in the winter and sent him a little coal to keep him from freezing to death, because he complained of the cold and said the fireplace did not furnish enough heat.

Henry S. Osborne, a lawyer interested in the building, was often at the building when he did not find Tilley there. He testified that on several occasions he banged hard at the door of Tilley's rooms without securing any response and without seeing Tilley. That at one time when he had gained access to Tilley's rooms, Tilley exhibited some plans of a building and talked about them, and gave his card, on which it was stated Tilley was an architect. Osborne and Tilley discussed the financial straits involving the property, and Osborne told him that the parties interested in the equity had no money with which to pay for plans for remodeling the building, or to remodel it and put it on an income producing basis. On one occasion he employed Tilley to make some sketches and paid him for them. Tilley never informed Osborne that he was custodian or in charge of the building, or that he was entitled to any compensation. That one time Tilley said he was going to Mexico where it was warm, and at another that he would go to Denver.

In conversation with Tilley March 17, 1903, in Osborne's office, where Tilley said he had come at the request of Hebard, being subsequent to the time Tilley made his claim to Hebard for compensation, Tilley said to Osborne, among other things, in the presence of Harper E. Osborne, that when Hebard first saw him at the Open Board of Trade Building he told him that he was not prepared to make any arrangement with him, and that Hebard never had made any arrangement with him or any one else. Harper E. Osborne corroborates Henry S. Osborne as to the statement made by Tilley March 17, 1903. Grant Carpenter corroborates the testimony of Hebard in relation to what was said between him and Tilley at the time he first visited the building after his appointment as receiver, and particularly as to Hebard's telling Tilley that he was not prepared to make any arrangement with him. He also testified negatively that Tilley never made any claim to him for pay.

It is patent from the foregoing that the judgment in this record is contrary to the greater weight of the evidence. The proof, instead of preponderating in favor of plaintiff's claim, entirely overcomes it, and as well said by this court in I. C. R. R. v. Cunningham, 102 Ill. App. 206: "The mere fact that a jury have passed upon questions of fact cannot absolve this court from the duty of determining whether or not the verdict is justified by the evidence. That duty by the statute is placed upon this court." And the observations of the court in Bradley v. Palmer, 103 Ill. 15, are of equal force here, that "When, as in the case at bar, the record shows that the verdict is against the clear weight and preponderance of the evidence, it will be set aside."

On the crucial question upon which plaintiff's right to recover rests, viz: the claim of his employment by Hebard as custodian of the building, three unimpeached witnesses flatly contradict him. The fact that Tilley was in indigent circumstances and for more than two years and a half made no claim on Hebard for com-

Hebard v. Tilley.

pensation, is a strong corroborate circumstance sustaining Hebard's insistence that he did not employ Tilley.

There were errors committed by the court in the rulings upon the evidence, particularly in ruling out some of the questions put to the witness Perkins, but in our view of the case, these errors are of no importance and do not materially affect the result. Neither are the objections made to the instructions of the court to the jury of controlling importance, and we therefore refrain from commenting upon them.

We do not regard the question of the personal liability of the defendant, because of the fiduciary capacity in which he was acting, under the evidence in this record, to be involved or necessary to a decision of this case.

It may, however, be stated as an axiomatic proposition, and it so appears in all the cases to which plaintiff's counsel has cited us, that wherever assignees, trustees, receivers, or the like, have been held to a personal responsibility, such responsibility is predicated upon contracts made by them either in their official capacity or contracts which, by legal construction, are held to have the quality of personal responsibility. But how can this contention arise in the case at bar? In the first place, it is admitted that defendant made known to plaintiff his official relation to the property and the capacity in which he was acting. In the second place, plaintiff has failed to establish by the evidence a claim against defendant in any capacity, personal or official.

The judgment of the Circuit Court being contrary to the greater weight of the evidence, it is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*